NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—November, 1882.

## MELCHER V. STEVENS.

*In the matter of the estate of* PARAN STEVENS, *deceased.*

*It seems,* that, previously to 1870, the Surrogate's court in New York county, as in other counties, had no general power of revising its own decisions upon the ground of error, either in law or in fact.

Code Civ. Pro., § 2481, subd. 6, giving to a Surrogate, in or out of court, power "to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error *or other sufficient cause,*" does not authorize the court to sit in review of its own decisions, as upon an appeal

After a decision, upon exceptions to a referee's report on executors' accounting, which was the result of a full consideration of the questions at issue between the parties, certain of the latter, being dissatisfied with the decision, applied to the Surrogate's successor for a reargument, contending that the same was clearly erroneous as to certain matters specified, and based upon a misapprehension of the facts established by the evidence.—

*Held,* that, assuming the court as then constituted to entertain essentially different views of the merits of the controversy from those formerly declared, this would furnish no *sufficient cause* for allowing a new discussion, with a view to a new determination, and that, accordingly, except as to certain *clerical errors* appearing, the application must be denied.

The considerations governing the determination of a motion, to *open a judgment or an order,* are equally applicable to the question of *granting a rehearing* in a case where the decision has not culminated in a formal decree.

APPLICATION by John L. Melcher and others, executors of, and trustees under decedent's will, for a reargument of exceptions to referee's report on the executors' accounting; opposed by Mrs. Stevens, widow of decedent, and executrix of his will. The facts appear sufficiently in the opinion.

BURRILL, DAVISON & BURRILL, *for executors.*

GEORGE ZABRISKIE, *for trustees.*

MAN & PARSONS, *for Marietta R. Stevens.*

THE SURROGATE.—This is an application for a reargument of the questions arising upon the report of the referee, who was appointed by my predecessor to examine and pass upon certain accounts, filed by the executors and by the executrix of this estate. Exceptions were filed to the referee's findings, and were heard by Surrogate Calvin, who rendered a decision upon which no decree has as yet been entered.

The executors of the testator, the trustees of Mrs. Stevens and the trustees of the residuary estate,. are dissatisfied with this decision, and have applied to the court for a reconsideration of the questions which it determines. The matters in controversy between the parties, and in regard to which it is claimed that the late Surrogate made an erroneous disposition, are the following:

First. Three items aggregating $125,000, being moneys paid to the Dime Savings Bank, in reduction of a mortgage of $425,000 on premises known as the Stevens apartment house, which had been transferred to Mrs. Stevens' trustees, on account of the trust of one million dollars created for her benefit by the will.

Second. An item of $5,950, paid as commissions to a broker for negotiating a transfer, to the New York Life Insurance Company, of the mortgage just referred to, after it had been reduced to $300,000.

Third. An item of $30,750 expended at various times

for repairs upon the apartment house, after it had been transferred to the trustees of Mrs. Stevens.

[As to all the amounts thus far specified, the main controversy, between the executors and trustees on the one hand, and Mrs. Stevens on the other, was whether or not these disbursements should be charged to the million-dollar trust.]

Fourth. An item of $20,000 paid by the executors to Mrs. Melcher personally, she being one of the *cestuis que trust* of the residuary estate.

Fifth. Several items, amounting in all to over $4,500, with which the executrix credited herself, on account of certain litigation in Boston.

Sixth. An item of $486.28, charged by the executrix against the estate on account of insurance, disallowed by the referee, and allowed in part by the Surrogate.

Seventh. An item of $300, for plumbing in the apartment house after the transfer to Mrs. Stevens' trustees.

Eighth. Three other items, credited to the executrix— one of $100, which is claimed to have been included twice in the account, another of $20, for architect's services, and another of $20, for surveying premises Nos. 228 and 230 Fifth avenue.

It is urged, by the counsel for the executors, that the decision of my predecessor is clearly erroneous as to certain of the matters above specified, and that such decision was based upon a misapprehension of the facts established by the evidence.

Upon a careful examination of the testimony, taken by the referee in this proceeding, and of the mass of papers and pleadings on file, I am led to believe that the decision of Surrogate Calvin was the result of a full con-

sideration of the questions at issue between the parties. I ought, no doubt, in the absence of evidence to the contrary, to assume that such is the fact, even if there were no evidence to support it (Terry v. Wait, *56 N. Y.; 91;* Taylor v. Grant, *4 J. & S., 261;* Weston v. Ketchum, *7 J. & S., 552*). Such evidence, however, is not wanting. In his written opinion on file, the principal matters here in controversy are fully discussed by the Surrogate, and the grounds of his decision thereon are stated at length.

The important question, therefore, which is at the very threshold of the present inquiry, is this: Assuming that my own views of the merits of this contention essentially differ from those which are declared by my predecessor; assuming, for example, that the court, as now constituted, would feel constrained to hold that the item of $125,000 should be charged to the trustees of Mrs. Stevens, and that, in other and important particulars, the decision criticised by the executor's counsel is erroneous, how far is it lawful and proper to allow a new discussion of these matters, with a view to a new determination? It is manifest that this can be best ascertained by reference to the practice and procedure of this court, and to those decisions and statutes which disclose the nature and extent of its jurisdiction.

Before the passage of the act of 1870, the Surrogate's court in this county was restrained within the same limits as were similar tribunals in other counties, as regarded its power to open orders and decrees, or to grant rehearings in favor of litigants. Its authority was confined to cases in which there had been some fraud or collusion, or some mistake occasioned by oversight or accident. It had no general power of revising its decisions,

upon the ground of error, either in law or fact (Brick's Estate, *15 Abb. Pr., 36;* Dobke v. McClaran, *41 Barb., 491;* Campbell v. Thatcher, *54 Barb., 382;* Wright's Accounting, *16 Abb. Pr., N. S., 446*).

In Brick's Estate (*supra*), Judge Daly, pronouncing the opinion of the court, says: "When all the parties in interest have been represented at the hearing, and the court has given its final sentence or decree, I know of no authority showing that these courts have ever exercised the general power of opening and reversing it, upon the ground that they had erred as to the law, or had decided erroneously upon the facts." This language is cited approvingly in Wright's Accounting (*supra*). To the same effect is Campbell v. Thatcher (*supra*).

Judge Leonard, in Dobke v. McClaran (*supra*), declares that he is "unable to find any authority for granting a rehearing in a case before the Surrogate, when it has been regularly heard and submitted on the merits."

In the case of Yale v. Baker (*2 Hun, 468*), the Supreme Court, in the fourth department, affirmed an order of the Surrogate denying an application to open a decree. Judge Gilbert, delivering the opinion, said: "Another insuperable obstacle to the maintenance of the petition to open the decree is that the error which it alleges would require a mere review by the Surrogate of his former decree. This can be done only by appeal."

In Decker v. Elwood (*3 T. & C., 48*), the Supreme Court, in the third department, while recognizing the power of the Surrogate to correct errors and mistakes apparent on the face of the proceedings, states that "the opening of the decree of a Surrogate, formally and lawfully made, is always a matter of extreme delicacy, and

requires the exercise of the soundest discretion. It should only be done in extraordinary cases, and where errors are plain, palpable and beyond any question. The greatest caution should at all times be observed, in thus furnishing the opportunity to correct errors in the judgment of a competent tribunal, and it should never be done to the extent of allowing the whole subject-matter to be investigated and tried over again. *Such a practice would be virtually permitting the tribunal to review its own proceedings, the same as upon an appeal,* which was never intended and should not be tolerated."

The jurisdiction of this particular court to open orders and decrees, and grant rehearings, was somewhat enlarged by chapter 359 of the statute of 1870 (Laws 1870, vol. 1, page 826). Its first section provided that the Surrogate of the county of New York should have the same power to set aside, open, vacate or modify the orders or decrees of the said court, as was exercised by courts of record of general jurisdiction. This authority has been extended, by subdivision 6 of section 2481 of the Code of Civil Procedure, to Surrogates' courts throughout the State. The latter section, which has supplanted the act of 1870 (*supra*), declares that the Surrogate has power to open, vacate, modify or set aside . . . a decree or order of his court, or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error or *other sufficient cause.* The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record of general jurisdiction exercises the same powers."

There can be no doubt that such circumstances as the decisions above cited deemed sufficient to justify the

opening and setting aside of orders and decrees, and the granting of rehearings, are among those now covered by the Code provision. But it cannot, as it seems to me, be justly claimed that, upon any of the grounds specified in those decisions, the power invoked in the case at bar can properly be exercised. This brings us to the question whether the Code gives any such enlargement of jurisdiction as will permit the rehearing of the matters here in dispute? If it does, it is because there have been, in these proceedings, some "clerical errors," to use the language of the statute, or some circumstances which are within the meaning of the phrase "other sufficient cause."

If the item of $100, and the two items of $20 each, have been improperly allowed to the executrix, they may well be claimed to have been so allowed "through clerical error or by mistake, the result of oversight or accident." As such, those items are properly the subject of reconsideration and correction. So, too, the item of $486.28 allowed for insurance, and referred to by the Surrogate as relating to Boston property, seems, in fact, to pertain to the premises in Fifth avenue, settled by Mr. Stevens upon his wife before his decease. But these matters, which could be easily corrected upon the settlement of the decree, are evidently regarded as of minor moment by the executors. Their contention chiefly relates to larger items, which are claimed to have been erroneously passed upon.

The question then recurs: Does the fact that my predecessor made such a disposition of some of these matters as would seem to me erroneous, constitute "sufficient cause," within the meaning of section 2481, for

the exercise of the Surrogate's power to open decrees and to grant rehearings?

Reference to the principles which control courts of record of general jurisdiction, in disposing of similar applications, has convinced me that the circumstances of the present case do not afford "*sufficient cause*" for granting the relief prayed for.

In Mount v. Mitchell (*32 N. Y., 702*), the Court of Appeals established the following rule, governing applications for a rehearing or reargument in that court: "Motions for reargument should be founded on papers showing clearly that some question decisive of the case, and duly submitted by counsel, has been overlooked by the court; or that the decision is in conflict with an express statute, or with a controlling decision, to which the attention of the court was not drawn, through the neglect or inadvertence of counsel."

The rule thus promulgated has since been substantially followed by the subordinate courts (1866, Newell v. Wheeler, *4 Robt., 194;* 1866, The Rector, etc., Trinity Church v. Higgins, *4 Robt., 372;* 1869, McGarry v. Board of Supervisors, *1 Sweeney, 219;* 1870, Bolles v. Duff, *56 Barb., 574;* 1871, Merrill v. Merrill, *11 Abb. Pr. N. S., 76;* 1872, Giles v. Austin, *2 J. & S. 545;* 1873, Taylor v. Grant, *4 J. & S., 260;* 1874, Guidet v. The Mayor, etc., N. Y., *5 J. & S., 126;* 1874, Curley v. Tomlinson, *5 Daly, 283;* 1878, Banks v. Carter, *7 Daly, 422;* 1881, Eggert v. Bonnett, *3 Law Bull., 85*).

These cases also maintain that, where a right of review exists, the party complaining of an adverse decision should be denied a rehearing, and left to his remedy by appeal, unless he can bring himself squarely within

the foregoing rules. These rules must control the disposition both of the present proceeding, and of similar proceedings hereafter. The propriety and, indeed, the necessity of some such restrictions are so obvious as to require no discussion. They are fully and clearly set forth, in the opinion of Justice Daly, in Curley v. Tomlinson (*supra*). See, also, matter of Dey Ermand (*24 Hun, 4*), a recent case, in which the Supreme Court construes the meaning of that section of the Code which furnishes the standard for testing the Surrogate's authority to deal with such applications.

The cases above cited involved, in most instances, possibly in all, the consideration of motions to open judgments which had been actually entered; but the reasons assigned for the decisions obviously make those decisions apposite and controlling in the present case, which has not as yet culminated in a formal decree.

I must, therefore, deny this petition, except so far as relates to the four minor items already specified. They may be corrected by agreement between the parties, if they are conceded to be erroneous; otherwise they can be passed upon by the court on presentation of the decree.

Ordered accordingly.