In re VAN NESS' WILL.

(Surrogate's Court, New York County. March 4, 1913.)

1. WILLS (§ 337*)—PROBATE PROCEEDINGS.
    An application to introduce further evidence in support of a petition for probate after probate has been refused is the equivalent of a motion under Code Civ. Proc. § 2481, subd. 6, which authorizes a surrogate to grant a new trial or a new hearing for fraud, newly discovered evidence, etc.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793–796; Dec. Dig. § 337.*]

2. COURTS (§ 202*)—SURROGATES—POWERS.
    Code Civ. Proc. § 2481, subd. 6, which authorizes a surrogate to grant a new trial or a new hearing for fraud, newly discovered evidence, cleri-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cal error, or other sufficient cause, limits the power to such causes; the surrogate being without authority to grant a motion ex gratia.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

3. WILLS (§ 337*)—PROBATE PROCEEDINGS—REHEARING—GROUNDS.

Under Code Civ. Proc. § 2481, subd. 6, which limits the grounds upon which a surrogate may grant a new trial to fraud, newly discovered evidence, clerical error, or other sufficient cause, after refusal of probate, a proponent is entitled to a new hearing only by showing one or more of such grounds.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793–796; Dec. Dig. § 337.*]

4. WILLS (§ 337*)—PROBATE PROCEEDINGS—REHEARING—GROUNDS.

Under Code Civ. Proc. § 2481, subd. 6, which authorizes a surrogate to grant a new trial on the ground of newly discovered evidence, etc., a proponent of a will is not entitled to a new hearing after refusal of probate to introduce testimony of witnesses whose testimony, if important, was available at the former hearing.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793–796; Dec. Dig. § 337.*]

5. WILLS (§ 337*)—PROBATE PROCEEDINGS—REHEARING—GROUNDS.

Nor is proponent entitled to a new hearing on the ground of newly discovered evidence of testimony of persons who knew testator and who would testify that he was a man of strong individuality, and not easily influenced by others, where at the former hearing 28 witnesses were examined on the issue of testator's capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 793–796; Dec. Dig. § 337.*]

In the matter of the probate of papers propounded as the last will and testament and a codicil thereto of Cornelius H. Van Ness. On motion to permit Alice Wood Van Ness as proponent to introduce further evidence in support of the original petition. Petition denied.

See, also, 78 Misc. Rep. 592, 139 N. Y. Supp. 485.

Application on affidavits and notice for an order permitting the proponent, Alice Wood Van Ness, to introduce further evidence in support of her original petition for probate. On December 14, 1912, the surrogate, after a very prolonged trial, made and filed a written decision with the clerk of the court, refusing probate to the testamentary scripts propounded by the petitioner. Thereafter, but before the signature of the final decree, the proponent comes again and makes this motion for a further hearing of the cause.

Warren Leslie and James A. O'Gorman, both of New York City, for the proponent's motion.

Martin, Fraser & Speir, of New York City (Wallace Macfarlane, and George C. Fraser, both of New York City, of counsel), for contestants opposed.

Conrad Milliken, of New York City, for contestant Day opposed.

Agar, Ely & Fulton, of New York City (Charles Blandy and Charles Blandy, Jr., both of New York City, of counsel), for testator's daughter, Mrs. Parsons, opposed.

FOWLER, S. After a most extended trial, deliberate and thorough arguments of counsel and long consideration, the surrogate on December 14, 1912, handed down a written decision on the merits of the

controversy. The pending motion is virtually an application for a reconsideration of the whole case and for leave to introduce additional testimony, which tends, in proponent's opinion, to nullify the conclusions actually reached by the surrogate. It ought always to be a subject of great care to the surrogate (of all judicial officers) that the door of this court should not be hastily shut against those who are obliged in the first instance to come here to prove the last wills and testaments of persons deceased. This, of all courts, should be liberal in its procedure and free from all manner of technicalities. Technicalities are less becoming in this court than elsewhere. But this does not mean that the procedure in this court is to be without reference to a seemly, a decent and an orderly procedure. The contestants having undergone a long and costly trial oppose this present motion, and they assert that the pending motion is virtually one for a new trial and to be regulated by the law governing new trials. They deny the right of the proponent to introduce further evidence after a decision of the cause and at this late stage, except for very well defined reasons, claimed not to be shown by the proponent. They also assert that this is not an instance where the surrogate is justified under the law in taking the further evidence now offered by the defeated deponent. They insist, with great emphasis of authority, that the proponent's motion is not consistent with the practice which governs further hearings and new trials in this court, and that the surrogate has no right to take the evidence offered, or to change a result definitively reached after long deliberation. They insist, also, that proponent is speculating on the result of a trial, and, having lost, desires a new hearing to obviate the result. Such in short are the contentions of the parties.

[1, 2] That those who oppose the present motion are virtually right in their contention, that the present application is the equivalent of a motion, under subdivision 6, § 2481, Code Civil Procedure, I cannot doubt in view of the authorities. If so, it can be granted only for the causes there specified, and explained by the decisions of courts of justice in similar cases. The surrogate cannot grant the motion ex gratia, or of his own motion and for a cause not specified or not sanctioned by authority. If application had been made after the case had been closed, but before a decision had been rendered, the surrogate could, in the exercise of his discretion, perhaps permit either side to introduce additional testimony. Martinhoff v. Martinhoff, 81 N. Y. 641. But after a decision has been rendered the reasons which should be given for a rehearing, or for the introduction of additional testimony, should be of the same character as those required to be given on a motion to open a judgment or for a reargument. Melcher v. Stevens, 1 Dem. Sur. 123. A decision by Mr. Surrogate Rollins to that effect in Melcher v. Stevens is entitled to much consideration in this court, for he was regarded as the professional and intellectual peer of any judge in this state, and he gave great attention to causes before him.

[3] The grounds enumerated for a new trial in subdivision 6 of section 2481 of the Code of Civil Procedure are fraud, newly discovered evidence, clerical error or other sufficient cause. The moving papers do not allege fraud, the existence of any clerical error, or other

sufficient cause. It is not contended that the evidence intended to be offered is newly discovered. Counsel for the proponent states in his brief that her application is not for a new trial, but is addressed to the conscience of the court. I am inclined to think that this is not a case where the conscience or discretion of the court may be exercised to open the proceedings for the purpose desired by the applicant, but that it is a case where the relief prayed for may be obtained only through an application made under section 2481, C. C. P. The surrogate is not a chancellor, to whom applications for relief may be made ex gratia, and the "other sufficient causes," specified in section 2481, C. C. P., are to be confined by the authorities to causes of a like nature, ejusdem generis, and not causes inconsistent with authority and precedent. The power to open "for other sufficient cause" does not mean at the will of the surrogate, or ex gratia, but for causes pursuant to established precedent in cases of like character.

[4] Treating the application as in reality a motion for a new trial, let us next consider what the moving papers disclose. The affidavits furnish the names of the proposed witnesses and the substance of the testimony which such witnesses are expected to give. One of the witnesses is Mrs. Alice Wood Van Ness, the proponent. It is alleged that, if she is now permitted to testify, she will contradict certain testimony given by Mr. Chedsey and by Frederick and Mary East on the trial before me of the issues raised by the objections of the contestants. Mrs. Alice Wood Van Ness was present during the very long trial. She was in the courtroom when the particular testimony which she now desires to contradict was being given by Mr. Chedsey and by Frederick and Mary East. If the testimony or any part of it was false, the proponent must have known it then as well as now. Even if it be assumed she did not realize the importance of taking the witness stand and contradicting their testimony, it cannot be assumed that her counsel was ignorant of its importance. She was represented by able and learned counsel—a gentleman who for many years was surrogate of this county and who, since his retirement from the bench, has participated in the trial of many important probate contests in this court. No better prepared counsel appears in this court. A gentleman of such wide experience, and possessing such marked qualifications, must have known the importance of having the testimony of Mr. Chedsey and the Easts contradicted by the proponent, and his failure to have his client take the witness stand for that purpose must have been prompted by reasons which in the exercise of his sound judgment appeared satisfactory to him.

Another proposed witness is proponent's brother, Harry W. Wood, whose testimony, it is alleged, would explain the testimony given by Mr. Parshall in regard to the payment made by him to Mr. Wood of the income from the $40,000 which Mr. Parshall had received from the testator's estate. Mr. Wood was present in court during the entire cross-examination of Mr. Parshall. He was therefore aware of the unfavorable nature of the testimony given by Mr. Parshall, and, had counsel so desired, he could have called Mr. Wood to the stand to contradict it at any time before the close of the case. This he failed

to do. His judgment on that point is final, and no doubt was well founded at the time.

[5] The other proposed witnesses are persons who knew the testator at some period of his life, and who, it is alleged, would testify that he was a man of strong individuality, and, if competent, that testator was not easily influenced by others. Such opinion evidence is of doubtful validity in any point of view. During the trial the proponent examined some 28 witnesses whose testimony was intended to show that the testator possessed considerable mental and physical strength, that he was tenacious of his opinions, and not easily swayed by the representations of others. Therefore the proposed testimony of the additional witnesses to the same effect would be merely cumulative. It is not newly discovered evidence within the legal meaning of that term. When the matter of the probate of testator's will was being tried before me, the examination and cross-examination of proponent's witnesses occupied 13 days, so that the proponent had ample time and opportunity to introduce all the testimony, whether direct or in rebuttal, which her counsel considered necessary. Never was trial more deliberate or less hurried. As the contestant's printed briefs were in possession of proponent's counsel before he commenced his oral argument, he was aware of the importance which they attached to the uncontradicted testimony of Mr. Chedsey and the Easts, so that counsel's failure to contradict it before the close of the case or before the decision of the court was filed was not caused by inadvertence, but was deliberate and premeditated. No affidavit of the trial counsel himself is submitted on the present motion. He does not claim surprise, inadvertence, or any oversight or inattention on his part. None such is suggested by any one. A controversy which was so protracted, and which was conducted on both sides by such learned, diligent and able counsel, should not be opened by the court after the publication of its decision for any reason other than the prevention of manifest injustice. The decision heretofore rendered by me refusing probate to the script was practically a termination of the probate proceeding, because the entry of the decree was a formality with necessarily succeeded the decision and from which it could not vary. The granting of a permission to either side to introduce further testimony after a decision has been rendered by the court would lead to interminable litigation. It would enable proponent to shift her position to meet the judgment. If I should allow this application, no decree of this court would ever again be final. In this court of all courts it is expedient that there should be an end to litigation, when the parties have had their day in court and have had ample time to take testimony and then closed their case on the deliberate advice of most able and experienced counsel. The fact that other able counsel differ in the policy pursued is no ground for a new trial.

But, in order that no injustice may intentionally be done the proponent, the surrogate has read with care all the affidavits which purport to state the additional evidence desired again at this late time to be given in by proponent. The surrogate is satisfied that, if such evidence had been in the cause, the result must have been the same. The

circumstantial evidence on the hearing discloses a very gross and unusual testamentary situation. The evidence was largely circumstantial, but the circumstances were proof irresistible. If testamentary papers executed in such a situation, as that disclosed in this cause, were, as against the intestate owners or heirs at law and next of kin of deceased, ever entitled to probate in solemn form in this court, and to receive the affirmative decree and the seal of this court, then the surrogate is convinced that it is time, in the interest of society and public order, that the testamentary law of this state should be speedily changed. But, even if the papers propounded were entitled under the existing law to probate, the surrogate would prefer that some other tribunal should have the responsibility of so decreeing in the first instance. While I have profound respect for the will of the dead, in this court the will of the dead must be established consistently with the highest legality and the highest morality. This the testamentary common law dictates and demands of us. The testamentary law of this state has some regard for public order. The statute of wills is a matter of public, not of private, law. The exercise of a testamentary power is unfortunately at the present economic crisis being subjected to the crucible of public opinion. A growing and respectable body doubt the expediency of any posthumous disposition of property. While public opinion is of no importance in courts of justice, the continuation of a power, upon which the civilization of the world depends and has been built up, should not be endangered by the application of a presumption for a will not clearly entitled to probate. At common law there was no presumption for a will, and the burden of proof was always on the proponent to establish an alleged will fully and completely. At common law no good will failed, but bad ones were not encouraged. We must remember that the presumption of law is always in favor of him who has not the burden of proof. If the burden is on a contestant the presumption is for the will. If the rule of the common law that the burden of proof is on proponent has been changed in this state, it is a subject for grave concern, but it cannot change the judgment reached in this cause. That it has not been changed I do believe, but, if it has, the result is the same on the evidence in this cause.

As the pending motion is entertained under section 2481, C. C. P., for any sufficient cause, I have taken the opportunity to re-examine the evidence and the opinion rendered by me in order to ascertain if, for any other cause than that assigned, I should reopen or continue the hearing. In Mount v. Mitchell, 32 N. Y. 702, the Court of Appeals laid down grounds for rehearing in that ulterior tribunal of the state, and there, if a decision is in conflict with any other controlling decision to which the attention of the court was not drawn, it is a ground for rehearing. I take it that a court of first instance cannot go astray if the same principle is adopted. I have therefore re-examined the very delicate question of burden of proof in a probate cause where pleas of undue influence and mental incompetency are interposed to a petition for probate, as since my decision rendered in this cause we have been favored with the judgment of the Court of Appeals in Mat-

ter of Kindberg, 207 N. Y. 220, 100 N. E. 789, an opinion of great importance to probate jurisdictions and one which I reviewed and made haste to follow in the Matter of Falabella, 139 N. Y. Supp. 1003. But in this cause, even if the burden of proof of undue influence rested throughout the cause on contestants, I am satisfied that they fully discharged that burden, and that undue influence, within the meaning of the law, was adequately and sufficiently established so as to counterbalance the factum of will in this cause. No error in that regard, to the detriment of proponent, was committed. But aside from this, as I stated in my prior opinion in this cause, the proponent holds substantially all the property of testator under conveyances by testator to her in his lifetime. This proceeding is a vain thing. If the conveyances to her are valid, the wills in her favor offered for probate in this proceeding are of no consequence to her except to aid her to defeat attacks on the separate conveyances. The probate sought is hardly within the spirit or contemplation of the statute of wills. Neither probate nor this motion ought to be of any real consequence to proponent if she stands in justice on the assignments to her. Thus it is that no legal or moral ground exists or is shown in any way for setting aside the prior decision of this court or for a hearing de novo of a cause so thoroughly heard in the past.

The motion is denied.